```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION
```

MARY ANN SANGUINETTI,                §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §      CIVIL ACTION NO. H-09-1358
                                     §
MICHAEL ASTRUE,                      §
COMMISSIONER OF THE                  §
SOCIAL SECURITY ADMINISTRATION,      §
                                     §
          Defendant.                 §

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] are Defendant's Motion for Summary Judgment (Docket Entry No. 12) and Plaintiff's Motion for Summary Judgment (Docket Entry No. 15).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability benefits under Title II of the Social Security Act ("the Act").

## A.  <u>Factual History</u>

-----

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 11-12.

Plaintiff was born on November 19, 1954.[2] She was forty-nine years old on the date of the alleged onset of disability, October 1, 2004.  Plaintiff has a Master's Degree in English from Middlebury College in Oxford, England.[3]  Prior to her alleged onset of disability, Plaintiff worked as an English teacher for grades six through twelve.[4]

    1.   **Plaintiff's Medical History**

        a.   **Rheumatoid Arthritis**

Plaintiff was diagnosed with sero negative rheumatoid arthritis by Joe Segal, M.D., in 1994.[5]  The related pain and swelling were managed well with a combination of Methotrexate, Prednisone, and Azulfidine until the fall of 2003.[6]  In fall 2003, Plantiff's pain and swelling worsened.[7] She was prescribed Humira; this drug was "somewhat effective" in relieving her symptoms, but Plaintiff discontinued use in June 2004 because she was concerned about the risk of cancer and heightened vulnerability to infection.[8]  In 2005, she was prescribed Arava but discontinued use

---

[2]    <u>See</u> Tr. 65.

[3]    <u>See</u> Tr. 556.

[4]    <u>See</u> <u>id.</u>

[5]    <u>See</u> Tr. 335.

[6]    <u>See</u> Tr. 336.

[7]    <u>See</u> <u>id.</u>

[8]    <u>See</u> <u>id.</u>

because it did not reduce pain or swelling.[9]  Plaintiff reported
pain in her hands, feet and knees, for which she was prescribed
Tylenol 4 and Amitriptyline.[10]  Plaintiff testified that 75-100 mg
of Amitriptyline allowed her to sleep through most nights without
pain.[11] She took Tylenol 4 as needed.[12]  Despite pain, swelling, and
fever, as of October 24, 2007, Plaintiff had little joint
degeneration, no neurological deficits, and no effect on her motor
function or strength.[13]

### b.   Osteoarthritis

In December 2001, an x-ray of Plaintiff's right knee showed
moderately advanced osteoarthritis[14] and chondrocalcinosis of the
right knee.[15]  In December 2003, x-rays revealed medial compartment
osteoarthritis of Plaintiff's right knee.[16]  In December 2006, x-
rays further revealed arthritis and medial degenerative
osteoarthritis of Plaintiff's left knee.[17]  Prior to June 2006, the

---

[9]    See id.

[10]   See Tr 537.

[11]   See id.

[12]   See id.

[13]   See Tr. 596, 602.

[14]   See Tr. 251.  Plaintiff is diagnosed with osteoarthrosis, which is
       a medical term used interchangeably with osteoarthritis.  See
       Merriam-Webster's Medical Dictionary 484 (1995).

[15]   See Tr. 251.

[16]   See Tr. 586.

[17]   See Tr. 587.

medical record indicates that Plaintiff suffered from medial compartment osteoarthritis of the right knee only, which had no effect on her gait.[18]

### c.   Fever and Fatigue

Plaintiff has a significant history of fever and fatigue.  She experienced very frequent low-grade fever and reported fatigue as a primary concern during most of her medical exams.[19]

Plaintiff acquired mononucleosis in the Fall of 2004, which precipitated her leave from employment.[20]  Her most significant complaints were fever and fatigue, which did not cease when the mononucleosis resolved.[21]  Extensive testing by an infectious disease specialist, Shahe Vartivarian, M.D., ("Dr. Vartivarian"), did not identify any infectious cause of the fever.[22]  During a follow up visit with Dr. Vartivarian on November 16, 2004, Plaintiff reported that she was "feeling overall improved and somewhat stronger with increased energy and less febrile" and that her aches and pains had improved.[23]

The medical expert ("ME") at her Social Security disability

---

[18]    See Tr. 608.

[19]    See Tr. 141-272.

[20]    See Tr. 336.

[21]    See Tr. 154-66.

[22]    See Tr. 141-53.

[23]    See Tr. 144.

hearing, John C. Anigbogu, M.D., ("Dr. Anigbogu"), testified that her fever and pain were probably the result of rheumatoid arthritis.[24]   Plaintiff reported that her physician, "Dr. McClufus,"[25] also told her the fever and fatigue were "more than likely" due to rheumatoid arthritis.[26]

### d.   Other Impairments

At the time of the Social Security Administration Hearing, Plaintiff was five feet eight inches tall and weighed 245 pounds.[27] She was obese, with a Body Mass Index of thirty-seven.[28]

Plaintiff sought treatment from Mark Rogers, M.D., P.A., for lateral epicondylitis ("tennis elbow") in January 2004.[29]   She returned in May 2006 with complaints of similar pain.[30]   During the latter appointment, she reported that the pain began in March 2006.[31]   There is no evidence on the record that Plaintiff suffered from tennis elbow between October 1, 2004, through December 31,

---

[24]   See Tr. 594.

[25]   The court could not locate notes in the medical record which indicated that Plaintiff was treated by a doctor of this name; Plaintiff may have referred to Grace Makhlouf, M.D., one of Plaintiff's treating physicians.

[26]   See Tr. 560.

[27]   See Tr. 589.

[28]   See id.

[29]   See Tr. 508.

[30]   See Tr. 503.

[31]   See id.

2005.

In the 1990s, Plaintiff suffered from peptic ulcer disease, a detached retina, pneumonia, a herniated disc, and viral meningitis.[32]  The record indicates that these conditions were resolved before October 1, 2004.[33]

## 2.  <u>Plaintiff's Abilities and Daily Activities</u>

Plaintiff testified that she was able to walk one to two city blocks,[34] could stand in one place for an hour,[35] could lift ten pounds with both hands,[36] could not bend or squat,[37] and could sit for "a couple of hours" with her legs elevated.[38]  Plaintiff testified that she was able to bathe, dress, and groom herself, to do some laundry, to prepare small meals, to drive a car, to read books, and to listen to the radio.[39]  She reported attending church most Sundays and occasionally visiting friends.[40]

On April 25, 2005, Plaintiff reported to her physician that she walked on a treadmill for forty minutes three to four times per

---

[32]    See Tr. 337.

[33]    See id.

[34]    See Tr. 566, 574.

[35]    See Tr. 567.

[36]    See Tr. 568.

[37]    See Tr. 569.

[38]    See Tr. 570.

[39]    See Tr. 571, 572, 574.

[40]    See Tr. 574.

week.[41]   In 2006, Plaintiff reported to her physician that she lifted weights two to three times per week and did "cardio" exercises five days per week.[42]   Her physician released her to participate in a YMCA swimming class which purported to "start easy and become progressively more difficult."[43]

The Plaintiff's treating physician, Grace Makhlouf, M.D., ("Dr. Makhlouf"), completed a Residual Functional Capacity ("RFC") Questionnaire provided by Plaintiff's attorney.[44]  On this form, Dr. Makhlouf estimated that Plaintiff was able to sit for two hours at one time,[45] stand for one hour at one time,[46] and, in a normal eight-hour workday, could sit for about four hours, stand or walk for less than two hours, and should walk around for approximately five minutes at thirty to forty-five minute intervals.[47]  Dr. Makhlouf wrote that Plaintiff could rarely lift and carry ten pounds, stoop, bend, or climb stairs.[48]  She could occasionally twist, but could

---

[41]     See Tr. 321.

[42]     See Tr. 463.

[43]     See Tr. 474. Ultimately, Plaintiff found the program too difficult to continue.

[44]     See Tr. 281.

[45]     See Tr. 282.

[46]     See Tr. 283.

[47]     See id.

[48]     See Tr. 284.

never crouch, squat, or climb ladders.[49]  Dr. Makhlouf wrote that
Plaintiff could use her fingers for fine manipulation and grasping,
turning, or twisting objects for one-third of an eight-hour
workday.[50]

The ME, Dr. Anigbogu, testified that when all of Plaintiff's
diseases and symptoms were considered, Plaintiff had an RFC of
"sedentary" on the date of the hearing.[51]  He reported that the
medical record showed no joint destruction, mild osteoarthritis,
strength-test results of 5/5, no neurological deficits, and that
Plaintiff's gait was "essentially normal."[52]  He further explained
that he specifically considered Plaintiff's pain, fever, and
fatigue when estimating her RFC.[53]  He testified that if he did not
consider Plaintiff's pain, fever, and fatigue in his analysis, her
RFC on the date of the hearing should not be "anything less than
light."[54]  Dr. Anigbogu testified that prior to June 2006, Plaintiff
had not yet developed osteoarthritis of the left knee, which would
elevate her RFC to light during the time between alleged onset and

---

[49]   See id.

[50]   See id.

[51]   See Tr. 593.

[52]   See Tr. 596, 597.

[53]   See Tr. 598.

[54]   See Tr. 598.

8

last date insured.[55]

**B.    Procedural History**

Plaintiff filed for disability benefits on June 23, 2005, claiming an inability to work since October 1, 2004, due to arthritis.[56]  Based on her earnings record with Katy Independent School District, Plaintiff remained insured through December 31, 2005.[57]  Thus, the relevant period for determining Plaintiff's disability status is October 1, 2004, through December 31, 2005.

Plaintiff's claim was initially denied on August 8, 2005, and denied upon reconsideration on November 21, 2005.[58]  Thereafter, Plaintiff filed a timely written request for a hearing before an administrative law judge ("ALJ") on December 1, 2005.[59]  The case was scheduled and convened on August 1, 2007.[60]  The ALJ reset the case for an October 2007 hearing to allow sufficient time for the medical expert to consider new medical evidence presented by the Plaintiff.[61]

On October 24, 2007, the ALJ conducted the disability

---

[55]    See Tr. 605.

[56]    See Tr. 65.

[57]    See Tr. 88.

[58]    See Tr. 14.

[59]    See Tr. 46.

[60]    See Tr. 546.

[61]    See id.

hearing.[62]  After listening to testimony presented at the hearing
and reviewing the medical record, the ALJ issued an unfavorable
decision on December 18, 2007.[63]  The ALJ found that Plaintiff was
not disabled from the date of alleged onset through the date last
insured.[64]

Plaintiff appealed that decision on February 8, 2008.[65]  The
Appeals Council denied her request for review on March 13, 2009,
thereby making the ALJ's decision the final decision of the
Commissioner.[66]  Plaintiff filed this timely civil action for
judicial review of the Commissioner's unfavorable decision.[67]

C.    **Commissioner's Decision**

In his December 2007 decision, the ALJ found that Plaintiff
did not engage in substantial gainful activity during the period of
October 1, 2004, through the date last insured, December 31, 2005.[68]
The ALJ found that during the relevant period between alleged date
of onset and last date insured, Plaintiff had the following severe
impairments:  sero  negative  rhematoid  arthritis,  bilateral

---

[62]    See Tr. 552.

[63]    See Tr. 21.

[64]    See id.

[65]    See Tr. 9-10.

[66]    See Tr. 4-6.

[67]    See Plaintiff's Original Complaint, Docket Entry No. 1.

[68]    See Tr. 16.

osteoarthritis of the knees, and chronic fever, but that none of these impairments alone or in combination met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, ("the Listings").[69]  In reviewing the Listing criteria, the ALJ referred to the ME's testimony that Plaintiff did not have the neurological deficits required to meet or equal section 1.02 of the Listings regarding arthritis nor did she have rheumatoid arthritis of a severity to meet or equal section 14.09 of the Listings.[70]

The ALJ also discussed the possibility that Plaintiff's obesity was an exacerbating factor when combined with Plaintiff's musculoskeletal impairments and stated that he considered this factor when assessing her RFC.[71]  The ALJ found that, through the date last insured, Plaintiff had the RFC to perform light work with a sit-and-stand option, and the additional restrictions of limited stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no crawling, balancing, or climbing of ladders or scaffolds; no repetitive fine dexterity or gripping with both hands; and avoiding hazards such as heights, vibration, and dangerous machinery.[72]

The ALJ found that the evidence suggested Plaintiff's

---

[69]     See id.

[70]     See id.

[71]     See Tr. 17.

[72]     See id.

medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but he found that Plaintiff's reports of the intensity of her subjective symptoms were credible only to an extent of an inability to perform medium and heavy work.[73]  He found that Plaintiff's allegations were not credible to the extent that they precluded all work activities.[74] He cited Plaintiff's daily activities such as cooking, attending church, receiving visitors, doing laundry, and driving a vehicle.[75] He also noted that she could dress and bathe herself as well as read and listen to the radio.[76]

The ALJ's decision also cites Dr. Anigbogu's testimony that Plaintiff's RFC was "light" until the claimant developed bilateral osteoarthritis of the knees.[77]  The bilateral osteoarthritis was not medically documented until December 28, 2006.[78]  Dr. Anigbogu testified this development would reduce claimant's RFC to sedentary work as of June 2006, six months after the date last insured.[79]  The ALJ cited Dr. Anigbogu's testimony that the medical record did not

---

[73]    See Tr. 19.

[74]    See id.

[75]    See id.

[76]    See id.

[77]    See id.

[78]    See id.

[79]    See id.

demonstrate Plaintiff's alleged inability to handle stress and that Plaintiff's pain should not preclude light work.[80]  The ALJ noted that Plaintiff's treating physician made statements that Plaintiff was totally disabled, but the ALJ found that she offered no support of these statements and found further that these statements were unsupported by the objective clinical evidence, significantly contradicted the medical expert's testimony, and were inconsistent with the evidence considered as a whole.[81]

The ALJ concluded that through the date last insured, the claimant's past relevant work as a teacher did not require the performance of work-related activities precluded by the claimant's RFC.[82]  He cited to the vocational expert's testimony that claimant's past relevant work as a teacher was light and skilled.[83] He further cited the vocational expert's testimony that a hypothetical person with the Plaintiff's RFC both before and after the development of bilateral osteoarthritis of the knees would find opportunities for other gainful employment in both the regional and national markets.[84]

---

[80]   See Tr. 20.

[81]   See id.

[82]   See id.

[83]   See id.

[84]   See id.

The Appeals Council denied Plaintiff's request for review.[85] They found no reason to review the decision and no evidence that the hearing or decision was unfair or that the ALJ decided Plaintiff's claim on a basis other than his evaluation of the issues and the evidence of record.[86]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002); <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

## A.  <u>Substantial Evidence</u>

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion," <u>Carey v. Apfel</u>, 230 F.3d 131, 135 (5th Cir. 2000).  It is "something more than a scintilla but less than a preponderance." <u>Id.</u>  The Commissioner has the responsibility of deciding any conflict in the evidence. <u>Id.</u>  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g);

---

[85]    <u>See</u> Tr. 4.

[86]    <u>See</u> Tr. 5.

14

Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown, 192 F.3d at 496. In other words, the court is to defer to the decision of the Commissioner as much as possible without making its review meaningless. Id.

**B.   Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520. By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth. Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance upon the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not

disabled.  <u>Greenspan</u>, 38 F.3d at 236.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny benefits.  Plaintiff contends that the ALJ failed to provide Plaintiff a full and fair hearing because the ALJ is biased against all Plaintiffs and all claims for disability and against this Plaintiff in particular.  Plaintiff also claims that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.

### A.   <u>ALJ Bias</u>

Plaintiff complains that the ALJ has "demonstrated a clear, unequivocal bias" against Social Security claims and claimants.[87] Plaintiff's counsel states that most of his appeals from this particular ALJ's decisions have resulted in remand and that several Houston-area attorneys filed an official complaint with the regional chief ALJ.[88]  Plaintiff complains that the ALJ routinely ignores evidence favorable to Plaintiffs.[89]  She states that the ALJ has the highest disapproval rate in the country for a Social Security Administration ALJ.

Plaintiff mistakenly relies upon a handful of decisions by the

---

[87]     <u>See</u> Plaintiff's Motion for Summary Judgment, Docket Entry No. 15 ("Pl. MSJ"), p. 5.

[88]     <u>See</u> Pl. MSJ at p. 6.

[89]     Id.

Court of Appeals for the Third Circuit holding that bias against a single Plaintiff can be demonstrated by an ALJ's bias against all claimants.[90]  That is not the rule in the Fifth Circuit, and this court is not persuaded to apply it.

This Court recognizes that Plaintiff's attorney may have a legitimate complaint pending with the regional chief ALJ; however, this court's inquiry is limited to the administrative record in this case.  See Vail v. Astrue, No. 4:08-cv-3087, 2009 WL 4877121 at *4, (S.D.Tex. 2009)(citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)).

The bar for making a finding of judicial bias is set high. "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994).  Without such a display, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . ." Brown v. Apfel, 192 F.3d 492 (5th Cir. 1999)(quoting Liteky, 510 U.S. at 555).

Although Plaintiff asserts that the ALJ was biased against her in particular, her briefs put forth no evidence of bias or improper decision-making in Plaintiff's case. She has not demonstrated that

---

[90]     Pl. MSJ at pp. 6, 7.

she was prejudiced by the ALJ's accused bias or that the ALJ demonstrated the kind of antagonism that would invite this court to overturn his decision.  Plaintiff cannot rely on her other grounds for reversal to show bias against her because, as detailed below, each of these grounds lacks merit.  There is no basis in the record for Plaintiff's claim of bias in this case.

**B.    Treating Physicians' Opinions**

Plaintiff contends that the ALJ erred as a matter of law by failing to request a more detailed report from the treating physician.[91]

An ALJ must request additional information to eliminate doubts about a treating physician's opinion "only when an applicant demonstrates a questionable gap in the record or prejudice from a failure to request information." Neely v. Barnhart, 512 F. Supp. 2d 992, 1003 (S.D. Tex. 2007)(citing Newton v. Apfel, 209 F. 3d 448, 457-58 (5th Cir. 2000)).  Medical sources must be recontacted only when evidence received is inadequate to determine whether the applicant is disabled. 20 C.F.R. § 404.1512(e).

In this case, there is no indication that Plaintiff's medical record was incomplete or unclear.  The ALJ delayed the disability hearing eighty-five days from the date it was first convened in order to allow the medical expert to review over 100 pages of new

---

[91]    Pl. MSJ at p. 7.

evidence that Plaintiff brought to her first hearing.[92]  At that hearing, the ALJ asked Plaintiff and Plaintiff's counsel to ensure that all relevant documentation was submitted before the next hearing,[93] and the record gives no indication that any documentation was missing on October 24, 2007.  In his decision, the ALJ did not suggest the record was ambiguous, only that it did not support Dr. Makhlouf's conclusion that Plaintiff was disabled.

Furthermore, even if the medical record was incomplete, Plaintiff has failed to meet her burden to show that if the ALJ had requested further records, Plaintiff "could and would have adduced evidence that might have altered the result." Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996). Thus, the court finds that the ALJ did not err by declining to request further medical records and that Plaintiff has failed to show that such error, if it exists, was not harmless.

Plaintiff also contends that the ALJ failed to complete the 20 C.F.R. § 404.1527(d)(2) analysis to identify his reasons for rejecting the treating physician's conclusions.[94] 20 C.F.R. § 404.1527(d)(2) requires the ALJ to consider:

(1) the physician's length of treatment of the plaintiff,
(2) the physician's frequency of examination,
(3) the nature and extent of the treatment relationship,
(4) the consistency of the physician's opinion with the

---

[92]    See Tr. 548.

[93]    See Tr. 549.

[94]    See Pl. MSJ at p. 7.

> record as a whole, and
> (5) the specialization of the treating physician.

See Newton v. Apfel, 209 F. 3d 448, 458 (5th Cir. 2000).  An ALJ
must undergo this analysis before disregarding the medical opinion
of a treating physician.

However, the determination of disability is not a medical
opinion entitled to deference, but a legal conclusion within the
Commissioner's scope of authority.  Frank v. Barnhart, 326 F.3d
618, 620 (5th Cir. 2003). A medical source's statement that the
claimant is "disabled" or "unable to work" does not mean the
Commissioner will determine that the claimant is, in fact,
disabled.  Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993)
(citing 20 C.F.R. §404.1527(e)(1)).

In this case, Dr. Makhlouf's opinion that Plaintiff was
disabled was found by the ALJ to be unsupported by and inconsistent
with the record as a whole.  The ALJ did not reject the medical
opinions of Plaintiff's treating physicians.  He gave deference to
the medical record, including treating physicians' observations and
diagnoses of Plaintiff's ailments.  In fact, the only rejected
portions of any treating physician's opinion were those directly
related to whether Plaintiff was disabled or unable to work and
opinions that attempted to estimate the Plaintiff's RFC.  The RFC
evaluation form and statements made by Dr. Makhlouf that Plaintiff

was "unable to work" and "cannot hold a job"[95] were entitled to some weight, but "the ALJ has sole responsibility for determining a claimant's disability status."  See Martinez v. Chater, 64 F. 3d 172, 176 (5th Cir. 1990).

Plaintiff also argues that the ALJ erred in finding that she was capable of working a forty-hour week. Plaintiff supports the contention that she cannot work forty hours per week with the same subjective reports of pain, fever, fatigue, and need for rest periods that she alleges undermine the decision as a whole.[96]  She quotes the ME's statement that Plaintiff would need to have some rest periods during the course of a workday and heavily relies upon an unofficial assessment of her RFC provided by her treating physician, Dr. Makhlouf.[97]

Again, "the ALJ has sole responsibility for determining a claimant's disability status."  See Martinez, 64 F. 3d at 176, Spellman, 1 F.3d at 364.  An RFC determination is by definition a determination of an individual's maximum ability to perform sustained work for a forty-hour week.  See Social Security Rulings 96-8p and 9p.[98]  Although Dr. Makhlouf estimated that Plaintiff

---

[95]     See Tr. 284.

[96]     See Pl. MSJ at p. 11.

[97]     See id.

[98]     Social Security Ruling ("SSR") 96-8p states, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means eight hours a day, for

could sit and stand for less than six hours in an eight-hour workday,[99] the doctor provided no objective evidence to support this estimation.  It is settled that the ALJ need not give deference to a physician's non-medical, RFC-related opinion if it is not supported by objective medical evidence.  See Martinez, 64 F. 3d at 176.  The ALJ found Plaintiff's subjective reports less than fully credible in light of the objective evidence.

## C.   Plaintiff's Credibility

Plaintiff claims that the ALJ erred by relying on Plaintiff's ability to perform light household chores when determining her RFC -- specifically, when deciding whether he found her claims of subjective symptoms of pain and fatigue credible.[100]

Plaintiff is correct that an ALJ may not rely solely on a claimant's ability to perform minimal household tasks.  See Mims v. Califano, 581 F.2d 1211, 1214-15 (5th Cir. 1978).  However, an ALJ may consider the claimant's daily activities in conjunction with other evidence when deciding disability status.  See Reyes v. Sullivan, 915 F.2d 151, 154-55 (5th Cir. 1990).  A medical expert's testimony that the medical history shows that a plaintiff should be

_____

five days a week, or an equivalent work schedule." SSR 96-9p continues, "RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis. . . . It is not the least an individual can do, but the most, based on all of the information in the case record."

[99]   See Tr. 283.

[100]   See Pl. MSJ at p. 12.

capable of light duty is substantial evidence that the plaintiff is actually capable of that level of activity, if the ALJ finds that the medical evidence supports the expert's conclusion.  See Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).

In assessing the credibility of a claimant's subjective complaints, there must be objective medical evidence of a medical impairment which could reasonably be expected to produce the symptom in the amount and degree alleged by claimant. 20 C.F.R. § 404.1529(a).  The ALJ need not give subjective evidence precedence over medical evidence.  See Loya v. Heckler, 707 F.2d at 211, 214 (5th Cir. 1983).  A finding that pain and fatigue are not disabling may be supported by evidence that there is no muscle atrophy, no significant joint degeneration or adverse neurological test results; that the treating physician did not prescribe prolonged bed rest or assistive devices; and that there is no support in objective medical findings for the complained-of level of symptoms. See Donner v. Barnhart, 285 F. Supp. 2d 800, 813-814 (S.D. Tex. 2002).

Here, despite claims of debilitating pain and fatigue, plaintiff testified that she was capable of daily activities such as cooking, attending church, receiving visitors, doing laundry, and driving a vehicle.[101]  She said that she could dress and bathe

---

[101]    See Tr. 19.

herself as well as read and listen to the radio.[102]  The ALJ relied on this testimony as well as the ME's assessment that no documented medical impairment should have prevented Plaintiff from performing light duty during the relevant time period.  Plaintiff's record indicates no muscle atrophy, no significant joint degeneration, and no adverse neurological test results.[103]  Her treating physician did not prescribe prolonged bed rest or assistive devices and even encouraged her to participate in an exercise program.[104] Substantial objective evidence supported a finding that Plaintiff's subjective symptoms were not disabling, and the ALJ was entitled to rely upon this evidence when assessing Plaintiff's credibility regarding the severity of her symptoms.  Thus, this court does not find that the ALJ relied upon improper evidence when he determined that Plaintiff's reports of subjective symptoms were not entirely credible.

**D.   Plaintiff's Other Impairments**

Plaintiff contends that the ALJ erred by finding that Plaintiff's fatigue, lateral epicondylitis, total body edema, peptic ulcer disease, drug side effects, and obesity were not "severe."[105]

---

[102]    See id.

[103]    See Tr. 596, 602.

[104]    See Tr. 474.

[105]    See Pl. MSJ at p. 10.

25

Whether a plaintiff's physical impairment is severe is considered at step two of the ALJ's analysis. 20 C.F.R. § 404.1520(4)(ii). Even if the ALJ finds that no medically determinable impairment rises to the level of severity required at step two, he still must consider whether the combined effects of all impairments would be of sufficient severity to interfere with the individual's ability to work. See Stone v. Heckler, 752 F.2d 1099, 1102 (5th Cir. 1985); see also Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000). If the ALJ finds that any combination of impairments would interfere with the individual's capacity for work, the ALJ may not conclude his analysis at step two, but must go on to the next step. 20 C.F.R. § 404.1520(4).

In this case, the ALJ's decision specifically cites Plaintiff's chronic fever as a severe impairment.[106] The ME testified that Plaintiff's fever was only a concern because of the fatigue associated with it, and that both were probably a product of her primary impairment, rheumatoid arthritis.[107] The ME also testified that Plaintiff's pain and fatigue were significant factors in his determination of her RFC.[108] He testified that the lack of damaging effects from Plaintiff's other impairments suggested she might be capable of light duty at the time of the

---

[106]   See Tr. 16.

[107]   See Tr. 594, 596.

[108]   See Tr. 598.

26

hearing, were it not for pain and fatigue.[109]   Because the ME
testified that her RFC was greater during the relevant period,[110]
the logical conclusion is that the ALJ would have found the
Plaintiff's RFC to be moderate during the relevant period, were it
not for pain and fatigue.

Because the ALJ specifically noted Plaintiff's fever and
fatigue as factors that reduced her RFC, this court cannot find
that the ALJ did not consider Plaintiff's fever and fatigue
"severe."

Plaintiff's obesity was discussed both during the hearing[111]
and in the ALJ's decision.[112]   The ALJ described it as an
exacerbating factor of the fatigue and pain which resulted from
Plaintiff's rheumatoid arthritis and osteoarthritis.[113]

As for Plaintiff's other impairments, the ALJ does not have a
duty to investigate possible disabilities that are neither alleged
by the claimant nor clearly indicated in the record.  Leggett v.
Chater 67F.3d 558, 566 (5th Cir. 1995).   The record contains no
evidence that Plaintiff suffered from lateral epicondylitis or
peptic ulcer disease during the relevant time period.   This court

---

[109]   See id.

[110]   See Tr. 605.

[111]   See Tr. 589.

[112]   See Tr. 17.

[113]   See id.

27

found only one indication in the record that Plaintiff suffered from total body edema at any time: in 2007, well beyond the relevant period.[114]  The ME indicated that Plaintiff had difficulty tolerating her medication,[115] but Plaintiff did not specify any on-going side effects in her administrative filings or proceedings, despite an extensive conversation with the ALJ about her medications.[116]

Plaintiff did not allege these conditions during the administrative proceedings, nor were they clearly indicated by the record.  Accordingly, the court does not find that the ALJ erred in failing to consider the above impairments severe.

**E.   RFC Assessment**

Plaintiff complains that the ALJ failed to consider her need to keep her feet elevated, the "eroded use of her hands," and obesity in formulating her RFC.  Plaintiff argues that this faulty RFC resulted in the ALJ posing a deficient hypothetical to the vocational expert.

After arriving at an RFC that takes into account all of the restrictions "reasonably warranted by the evidence," an ALJ may rely on the response of a vocational expert to a hypothetical

---

[114]   See Tr. 333.

[115]   An examination of the record revealed that Plaintiff discontinued medication that caused a rash and hives.

[116]   See Tr. 578-80.

question on job availability as it relates to a person with the claimant's limitations.  Dominique v. Barnhart, 388 F.3d 462, 463 (5th Cir. 2004). In order for the vocational expert's testimony to serve as substantial evidence for the ALJ's decision, the hypothetical question must incorporate all of the limitations recognized by the ALJ, and the expert's testimony must be subject to the claimant's cross-examination.  See Masterson v. Barnhart, 309 F.3d 267, 274 (5th Cir. 2002). When formulating a hypothetical question for the vocational expert, an ALJ is required only to include those impairments recognized by the ALJ in his decision. See Bowling v. Shalala, 36 F.3d 431, 435-36 (5th Cir. 1994) (stating that the hypothetical question posed to the vocational expert must be consistent with the RFC assessment).

The ALJ appropriately applied these legal standards in this case.  The ALJ asked Plaintiff during the hearing whether it was enough to elevate her feet "on a little stool;" Plaintiff replied, "Yes."[117]  This is consistent with her treating physician's report that Plaintiff's feet should be elevated one-foot from the ground.[118]  The ALJ's RFC included the option for Plaintiff to sit or stand as needed throughout the workday; the court can find no reason why Plaintiff could not prop her feet on a stool while seated at work.  The ALJ specifically asked the ME about

---

[117]   See Tr. 570.

[118]   See Tr. 283.

Plaintiff's difficulty using her hands,[119] and the vocational expert was told to consider Plaintiff's difficulty with repetitive fine dexterity and gripping.[120] As noted _supra_, Plaintiff's obesity was also discussed both during the hearing[121] and in the ALJ's decision.[122] The ALJ described it as an exacerbating factor of the pain and fatigue which resulted from Plaintiff's rheumatoid arthritis and osteoarthritis.[123]

Plaintiff's pain and fatigue, in the degree that the ALJ found was supported by objective evidence, were considered and impacted the RFC by reducing it by one degree of activity: from moderate to light during the relevant time period, then light to sedentary at the time of the hearing. Thus, the ALJ made accommodations for Plaintiff's multiple impairments when formulating the RFC, and the hypothetical he posed to the vocational expert is consistent with his formulation.

Because the court has determined that the ALJ's decision was based on substantial evidence in the record, the court cannot find that the ALJ erred in determining that Plaintiff could complete a forty-hour work week of light duty, with the specified limitations,

---

[119]   See Tr. 612.

[120]   See id.

[121]   See Tr. 589.

[122]   See Tr. 17.

[123]   See id.

during the period of October 1, 2004, to December 31, 2005. Accordingly, the court finds that Plaintiff is not entitled to summary judgment.   Defendant also moves for summary judgment. Having found that the ALJ's decision contains no legal error and is supported by substantial evidence, the court finds that Defendant's summary judgment motion should be granted.

### IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion.

**SIGNED** in Houston, Texas, this 7th day of July, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge

31